**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ELMER ORLANDO ANAYA GOMEZ and WILLIAM NOE BATRES, Individually and on Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>-against-<br><br>**CHAMIARA, INC. d/b/a HAVEN DINER, MELA FOOD CORP. d/b/a HAVEN DINER, HARBANS SINGH, BALWINDER "LINDA" KAUR and ALEX MOLINA, Jointly and Severally,**<br><br>**Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Elmer Orlando Anaya Gomez ("Anaya") and William Noe Batres ("Batres" and, together with Anaya, the "Plaintiffs"), individually and on behalf of all others similarly situated, as collective and class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs are former dishwashers and delivery employees, a busser, a grill man and a line cook for Defendants' diner located in Port Washington, New York. For their work, during the relevant time period, Plaintiffs were not paid minimum wages for all hours worked and were not paid overtime premiums for hours worked over forty (40) in a given workweek.

2.      Plaintiffs bring this action to recover unpaid minimum wages and overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*. Plaintiffs also bring claims for unpaid spread-of-hours premiums, unlawfully withheld gratuities, and for failure to provide proper wage notices and wage statements pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

3.      Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all non-management employees working for Defendants in New York during the six (6)-year period preceding the filing of this complaint.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

6. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

7. On March 20, 2020, New York Governor Andrew M. Cuomo signed Executive Order 202.8 in an effort to stem the spread of COVID-19, which tolls for thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under any New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020 and continues until April 19, 2020. On April 7, 2020, Governor Cuomo signed Executive Order 202.14, which extended the tolling period thirty (30) days from April 7, 2020, until May 7, 2020. Subsequently, on May 7, 2020, Governor Cuomo issued Executive Order 202.28, tolling all statutes of limitations for an additional thirty (30) days through June 6, 2020.

## THE PARTIES

**Plaintiffs:**

8. Plaintiff Elmer Orlando Anaya Gomez ("Anaya") was, at all relevant times, an adult individual residing in Nassau County, New York.

9. Plaintiff William Noe Batres ("Batres") was, at all relevant times, an adult individual residing in Nassau County, New York.

10. Throughout the relevant time period, Plaintiffs performed work for Defendants at their restaurant located at 6 Haven Ave, Port Washington, NY 11050.

11. Plaintiffs consent in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendants:**

12. Chamiara, Inc. is an active New York Corporation doing business as "Haven

Diner," with its principal place of business at 6 Haven Ave, Port Washington, NY 11050.

13.     According to the New York State Department of State, Division of Corporations, Chamiara, Inc. was registered on December 14, 2007.

14.     According to the New York State Department of State, Division of Corporations, Defendant Harbans Singh ("Singh") is the chief executive officer of Chamiara, Inc.

15.     Mela Food Corp. is an active New York Corporation doing business as "Haven Diner," with its principal place of business at 6 Haven Ave, Port Washington, NY 11050.

16.     According to the New York State Department of State, Division of Corporations, Mela Food Corp. was registered on July 17, 2019.

17.     In corporate filings with the New York State Department of State, Division of Corporations, Defendant Alex Molina ("Molina") is listed as the contact person for DOS Process for Mela Food Corp.

18.     Chamiara, Inc. and Mela Food Corp. are hereinafter referred to as "Haven Diner" or the "Corporate Defendants."

19.     Upon information and belief, Defendants Singh, Molina and Balwinder "Linda" Kaur ("Kaur" and, together with Singh and Molina, the "Individual Defendants") are current and/or former owners, operators and managers of the Corporate Defendants.

20.     Upon information and belief, Defendants Singh and Kaur are spouses.

21.     The Corporate Defendants and the Individual Defendants are hereinafter collectively referred to as the "Defendants."

22.     The Individual Defendants maintained operational control over the Corporate Defendants and managed Haven Diner by determining the wages and compensation of employees, establishing employees' schedules, maintaining employee records, and through possessing the

authority to hire and fire employees, including Plaintiffs.

23.     The Individual Defendants participated in the day-to-day operations of the Corporate Defendants and acted intentionally in their direction and control of Plaintiffs and Defendants' other similarly situated employees, and are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendants.

24.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

25.     At all relevant times, Defendants employed, and/or continue to jointly employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

26.     At all relevant times, Plaintiffs, the opt-in plaintiffs, and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

27.     Upon information and belief, at all relevant times, the Corporate Defendants have had gross annual revenues in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

24.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First and Second Causes of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since May 14, 2017 and through the entry of judgment in this case (the "Collective Action Period") who worked as non-management employees at Haven Diner (the "Collective Action Members").

25.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants'

illegal policies of failing to pay minimum wage for all hours worked and failing to pay overtime premiums for work performed in excess of forty (40) hours each week. As a result of these policies, Plaintiffs and the Collective Action Members did not receive the legally-required minimum wages for all hours worked and overtime premium payments for all hours worked in excess of forty (40) hours per week.

26.     Plaintiffs and the Collective Action Members have substantially similar job duties and were paid pursuant to a similar, if not the same, payment structure.

### NEW YORK FED. R. CIV. P. 23 CLASS ACTION ALLEGATIONS

27.     Pursuant to the NYLL, Plaintiffs bring their Third through Eighth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants at any time since May 14, 2014 and through the entry of judgment in this case (the "Class Period") who worked as non-management employees at Haven Diner (the "Class Members").

28.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

29.     The Class Members are so numerous that joinder of all members is impracticable.

30.     Upon information and belief, there are in excess of forty (40) Class Members.

31.     The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class. These common questions include, but are not limited to:

> a.   whether Defendants employed Plaintiffs and the Class Members within the

meaning of the NYLL;

b.  whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

c.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members minimum wage for all hours worked;

d.  whether Defendants properly notified Plaintiffs and the Class Members that they were taking the "tip credit" against the full minimum wage;

e.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

f.  whether Defendants failed to pay Plaintiffs and the Class Members an extra hour of minimum wage when working shifts in excess of ten (10) hours and/or split shifts;

g.  whether Defendants illegally retained gratuities left by customers and failed to pay all such gratuities to Plaintiffs and the Class Members;

h.  whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

i.  whether Defendants failed to provide proper wage notice to Plaintiffs and Class Members at the beginning of their employment and/or before a change in wage rate, as required by the NYLL;

j.  whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

k.  whether Defendants are liable for all damages claimed hereunder, including but

not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

32.     Plaintiffs' claims are typical of the Class Members' claims. Plaintiffs, like all Class Members, were restaurant employees of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, paid less than the statutory minimum wage for all hours worked, were not paid overtime premium pay for hours worked over forty (40) hours in a given workweek, were not paid spread-of-hours premiums when working a shift of ten (10) or more hours and/or a split shift, were not paid all gratuities to which they were entitled and did not receive proper wage statements and wage notices. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

33.     Plaintiffs and their Counsel will fairly and adequately represent the Class. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

34.     Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

35.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

36.     Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

37.     The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other current litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise

in managing the class action.

## STATEMENT OF FACTS

**Defendants' Restaurant**

38.     At all relevant times, Defendants have been in the food service business.

39.     Upon information and belief, Defendant Singh owned, operated and managed Haven Diner since the start of the relevant time period through in or around July 2019, when Defendant Molina began operating and managing the diner.

40.     According to an August 23, 2019 Patch article, "Alex Molina, of Levittown, told Patch on Friday his family bought the restaurant [Haven Diner] on the corner of Main Street and Haven Avenue about a month ago." *See* https://patch.com/new-york/portwashington/port-washington-diner-reopens-new-upgrades-homemade-muffins.

41.     Upon information and belief, Haven Diner operates seven (7) days per week, from 6:00 am to 9:00 pm Sunday through Thursday and from 6:00 am to 10:00 pm, and sometimes later, on Fridays and Saturdays, depending on how busy the restaurant is.

42.     At all relevant times, the Individual Defendants have been a constant presence at Haven Diner, where they manage the operations of the restaurant and take an active role in ensuring that the business is run in accordance with their procedures and policies.

43.     Upon information and belief, at all relevant times, the Individual Defendants have had power over payroll and personnel decisions at Haven Diner, including the power to hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

44.     From the start of the relevant time period through in or around July 2019, Defendants Singh and Kaur ran the diner together and were primarily responsible for hiring, firing

and supervising employees, and overseeing the overall business operations of Haven Diner. Singh and Kaur did not employ any on-site managers and/or supervisors.

45.     From the start of the relevant time period to in or around July 2019, Plaintiffs observed Defendants Singh and/or Kaur at Haven Diner on a daily basis supervising and giving orders to employees and otherwise overseeing the operations of the diner.

46.     When Molina began operating and managing Haven Diner in or around July 2019, he changed employees' schedules, supervised employees and generally oversaw the business operations of the diner. Starting in or around August 2019, when the diner reopened after being closed for renovations for several weeks, Plaintiffs observed Defendant Molina in the diner on a daily basis supervising and giving orders to employees and otherwise running the overall business operations of the diner.

47.     Similar to Defendants Singh and Kaur, Defendant Molina ran the diner without the assistance of on-site managers and/or supervisors and was primarily responsible for hiring, firing and supervising employees and overseeing the overall business operations of Haven Diner.

**Plaintiffs' Work for Defendants**

48.     **Plaintiff Anaya** was employed by Defendants at Haven Diner as a dishwasher, busboy, delivery employee and porter from in or around 2011 through on or about March 18, 2020, excepting the period between July 14, 2019 and August 17, 2019, when the diner was closed for renovations (the "Anaya Employment Period"). On or about March 18, 2020, Defendant Molina called Plaintiff Anaya on his day off and told him that he did not need to come into work until further notice, as the business was slow due to the COVID-19 national health emergency. Molina informed Anaya that Molina and his wife, "Lexi," would take care of the diner. As of the date of this filing, Plaintiff Anaya has not been contacted by Molina to return to work and has filed for

unemployment insurance benefits.

49.     From the start of the relevant time period through in or around 2013, Plaintiff Anaya worked for Defendants as a dishwasher. In addition to his dishwashing duties, Plaintiff Anaya also performed deliveries, cleaned up around the kitchen and unloaded deliveries from trucks. Starting in or around 2013, Anaya began working as a busboy in addition to fulfilling his regular kitchen, porter and delivery duties.

50.     Throughout the relevant time period, Plaintiff Anaya performed deliveries using his personal vehicle. During a slow week, he typically made approximately ten (10) deliveries, which increased to around twenty (20) deliveries when the diner was busier.

51.     Plaintiff Anaya was additionally responsible for unloading and putting away deliveries to the diner. Haven Diner typically received two (2) large deliveries during the week, one on Tuesdays or Wednesdays that contained vegetables and other restaurant supplies and one on Fridays that contained meat and poultry.

52.     From the start of the relevant time period through in or around July 2019, Defendants Singh and Kaur supervised, directed and controlled Anaya's work and frequently gave him orders on what specific tasks to complete. Anaya was hired by Defendant Singh, who informed him the hours that he would be working and what his salary amount would be. Plaintiff Anaya observed Defendants Singh and/or Kaur in the diner on a daily basis.

53.     From in or around August 2019 through the end of the Anaya Employment Period, Defendant Molina supervised, directed and controlled Anaya's work and frequently gave him orders on what specific tasks to complete. Molina offered Anaya a salary of four hundred and fifty dollars ($450.00) per week when he took over the diner, which he subsequently increased to four hundred and eighty dollars ($480.00) per week in or around February 2020, and changed Anaya's

schedule. Molina typically gave Anaya his weekly payment and ultimately instructed Anaya not to come to work due to the diner's lack of patrons during the 2020 COVID-19 outbreak.

54.     From the start of the relevant time period to in or around July 2019, when Defendants Singh and Kaur owned, operated and managed the diner, Plaintiff Anaya typically worked six (6) days per week, from approximately 10:00 am to between 8:00 pm and 8:30 pm, and sometimes as late as 9:00 pm, four (4) weekdays per week, and from approximately 9:00 am to 8:00 pm on Saturdays and Sundays, for a total of approximately sixty-two to sixty-eight (62-68) hours per week.

55.     From in or around August 2019 through the end of the Anaya Employment Period, Plaintiff Anaya typically worked six (6) days per week, from approximately 6:00 am to between 4:00 pm and 4:30 pm, for a total of approximately sixty to sixty-four (60-64) hours per week.

56.     From the start of the relevant time period to in or around July 2019, when Defendant Singh operated and managed the diner, Plaintiff Anaya was generally able to take a thirty (30)-minute uninterrupted break during his shift. On several occasions, Defendant Singh interrupted Anaya's break to ask if he could assist with some tables such that he was unable to take the full thirty (30) minutes. On certain occasions when the diner was exceptionally busy, Plaintiff Anaya was unable to take a break of any kind.

57.     Starting in or around August 2019, when Anaya returned to work under Molina's supervision after the restaurant was closed for several weeks for renovations, Plaintiff Anaya was not permitted to take breaks of any kind. On certain occasions when he attempted to eat his lunch in the kitchen, Molina reprimanded him for "taking liberties" that other employees would not dare attempt. Ultimately, starting August 2019, Plaintiff Anaya was generally unable to take more than ten to fifteen (10-15) minutes to eat a meal during his shift.

58.     From the start of the relevant time period through in or around July 2019, when Defendants Singh and Kaur owned, operated and managed the diner, Plaintiff Anaya was paid a purported salary in the amount of four hundred dollars ($400.00) per week, for all hours worked, including those worked in excess of forty (40) in a given workweek.

59.     From in or around August 2019 through in or around January 2020, Plaintiff Anaya was paid a purported salary in the amount of four hundred and fifty dollars ($450.00) per week for all hours worked, including those worked in excess of forty (40) in a given workweek.

60.     From in or around February 2020 through on or about March 17, 2020, Plaintiff Anaya was paid a purported salary in the amount of four hundred and eighty dollars ($480.00) per week for all hours worked, including those worked in excess of forty (40) in a given workweek.

61.     Upon information and belief, Defendant Molina began paying Anaya four hundred and fifty dollars ($450.00) per week in or around August 2019 based on information he gathered from Defendant Singh regarding the amount Anaya had earned in the past. In or around February 2020, Plaintiff Anaya complained to Molina's wife, "Lexi," who worked at the diner as a cashier and sometimes assisted Molina with the accounting books, that four hundred and fifty dollars ($450.00) was not enough to compensate him for the amount of work that he was performing. Lexi informed Anaya that she would speak with Molina about increasing his weekly salary. Shortly after Anaya's conversation with Lexi, Molina increased Anaya's payment to four hundred and eighty dollars ($480.00) per week.

62.     When Plaintiff Anaya worked as a busboy, he did not receive tips of any kind left by customers. On numerous occasions, Anaya witnessed Kaur take the money that customers left on the table or the counter as tips intended for Defendants' front-of-the-house employees, including Anaya, and put them in her pocket or her purse. When a customer left a tip via credit

13

card, Anaya simply never received it.

63.     Although Defendant Kaur frequently helped with serving tables and managing the counter, throughout the relevant time period, she supervised, gave orders to, and occasionally paid employees and generally oversaw the business operations of the diner along with Defendant Singh, such that her primary role was that of an owner and/or manager.

64.     Throughout the relevant time period, Plaintiff Anaya was generally able to keep his tips when he performed deliveries, as the vast majority of the tips were paid in cash. Although he generally received tips that delivery customers left on credit cards, he often had to argue with Defendants to recover them. For example, on one (1) occasion, when Anaya returned to the diner from making a delivery, he asked Kaur for a five-dollar ($5.00) tip that he was aware that a customer had left for him on a credit card. Although Kaur initially denied the existence of the tip, after Anaya pressed further, Kaur ultimately informed Anaya that she "always" keeps the tips that customers leave in the diner. On this particular occasion, Kaur eventually gave Anaya the five-dollar ($5.00) tip to which he was entitled. However, as mentioned above, Anaya did not receive tips of any kind when he performed work for Defendants as a busboy.

65.     At no point during his employment period did Anaya receive a written notice or any other notification that Defendants were taking the tip credit in calculating his hourly rate, nor did Defendants provide to Plaintiff Anaya a wage notice setting forth his hourly rate or the fact that Defendants were taking the tip credit.

66.     From the start of the relevant time period through in or around the last three (3) weeks of his employment, Plaintiff Anaya received his payment entirely in cash without a paystub or any other breakdown of the hours that he worked or his regular or overtime rates. During the last three (3) weeks of his employment period, Plaintiff Anaya received his four hundred and

eighty-dollar ($480.00) payment via a combination of a personal check from Molina in the amount of three hundred and sixty dollars ($360.00), with the remaining one hundred and twelve dollars ($112.00) paid in cash.

67.     In or around 2015, Plaintiff Anaya asked Defendant Singh if he could be paid "on the books," as he was in the process of applying for a certain immigration status for which he needed to prove that he was filing taxes. Defendant Singh denied his request, informing Anaya that the diner "already had enough people" who were paid on the books. Subsequently, when a relative of Singh began working at the diner, Defendants immediately put him on the books and began issuing him a payroll check with tax withholdings. When Anaya confronted Singh about the situation, Singh ultimately agreed to put him on the books. Thus, starting in or around 2015, Anaya began receiving an annual IRS Form W-2. However, throughout his employment period, Plaintiff Anaya never received a paystub showing the breakdown of his tax withholdings and does not recall filling out an IRS Form W-4 for Defendants.

68.     **Plaintiff Batres** was employed by Defendants at Haven Diner as a dishwasher, cook and delivery employee from in or around 2008 through on or about March 15, 2020, excepting the period between July 14, 2019 and August 17, 2019, when the diner was closed for renovations (the "Batres Employment Period"). Unlike Plaintiff Anaya, Plaintiff Batres left his position of his own accord and was not asked to leave his employment for any reason by Defendants.

69.     Plaintiff Batres worked as a dishwasher and delivery employee during approximately the first year of his employment, from 2008 through 2009. Starting in or around 2009, he began working as a grill man. Starting in or around 2012 or 2013, after a more experienced cook left the diner, Plaintiff Batres began working at additional stations around the

kitchen and learned to prepare numerous dishes on the menu, in addition to working the grill. Plaintiff Batres frequently worked alongside Defendant Singh, who often helped cook many of the dishes at the diner.

70.     From the start of the relevant time period through in or around July 2019, when Defendants Singh and Kaur operated and managed the diner, Plaintiff Batres typically worked six (6) days per week, from approximately 6:00 am to 3:30 pm, and sometimes as late as 4:00 pm, for a total of approximately fifty-seven (57) hours per week, and sometimes more.

71.     From in or around August 2019 through the end of the Batres Employment Period, Plaintiff Batres typically worked six (6) days per week, from approximately 6:00 am to 4:00 pm, for a total of approximately sixty (60) hours per week.

72.     From the start of the relevant time period through in or around August 2019, Defendants Singh and Kaur supervised, directed and controlled Batres's work and frequently gave him orders on what specific tasks to complete. Batres was hired by Defendant Singh, who informed him of the hours that he would be working and what his salary amount would be. During this period, Plaintiff Batres observed Defendants Singh and Kaur in the diner on a daily basis.

73.     From in or around August 2019 through the end of the Batres Employment Period, Defendant Molina supervised, directed and controlled Batres's work and frequently gave him orders on what specific tasks to complete. When he took ownership of the diner, Molina offered Batres a salary of six hundred and fifty dollars ($650.00) per week and gave Batres his new schedule. Molina typically gave Batres his weekly payment. Molina also instructed Batres how to make certain new dishes that he had added to the menu.

74.     From the start of the relevant time period to in or around July 2019, when Defendant Singh operated and managed the diner, Plaintiff Batres was generally able to take a thirty (30)-

minute uninterrupted break during the workday. On several occasions, he was not able to take a full break or a break of any kind because the diner was especially busy.

75.     Starting in or around August 2019, when Batres returned to work under Molina's supervision after the restaurant was closed for several weeks for renovations, Plaintiff Batres was not permitted to take breaks of any kind.

76.     From the start of the relevant time period through in or around 2015, Plaintiff Batres was paid a purported salary in the amount of five hundred and twenty-five dollars ($525.00) per week. From in or around 2016 through 2017, Plaintiff Batres was paid a purported salary of five hundred and fifty dollars ($550.00) per week. From in or around 2018 through in or around July 2019, Plaintiff Batres was paid a purported salary of five hundred and seventy-five dollars ($575.00) per week.

77.     From in or around August 2019 through the end of the Batres Employment Period, when Batres returned to work under Molina's supervision after the restaurant was closed for several weeks for renovations, Plaintiff Batres was paid a purported salary of six hundred and fifty dollars ($650.00) per week.

78.     Regardless of the specific amount that he was paid, Plaintiff Batres's salary was intended to compensate him for all hours worked, including those worked in excess of forty (40) in a given workweek.

79.     Throughout the Batres Employment Period, Plaintiff Batres received his payment entirely in cash without a paystub or any other breakdown of the hours that he worked or his regular or overtime rates.

80.     Throughout the relevant time period, Defendants maintained no formal timekeeping system to keep track of the hours that Plaintiffs and Defendants' other restaurant

employees worked.

81.    From the start of the relevant time period through in or around July 2019, Defendants Singh and Kaur managed payroll and the accounting books for Haven Diner. During this period, Plaintiffs typically received their payments from Defendant Singh or, if Defendant Singh were not available, from Defendant Kaur. Defendant Singh typically handled conflicts among employees, including complaints about discrepancies with their pay.

82.    Starting in or around July or August 2019, Defendant Molina began managing payroll and the accounting books for Haven Diner. After Defendant Molina began operating and managing the diner, Plaintiffs typically received their payments from Defendant Molina. Although Plaintiffs frequently observed Molina's wife, "Lexi," giving Molina money to pay the employees, Plaintiffs never received money directly from Lexi. Defendant Molina also typically handled conflicts among employees, including complaints about discrepancies with their pay.

83.    Given the number of hours that Plaintiffs worked each week and the amount of their fixed weekly salaries, Plaintiffs regularly received less than the applicable minimum wage for all hours that they worked during the week.

84.    Throughout their respective employment periods, Plaintiffs were also not paid overtime premiums of one and one-half (1.5) times his regular hourly rate for hours worked over forty (40) each workweek.

85.    Despite the fact that Plaintiffs regularly worked shifts in excess of ten (10) hours, they were not paid spread-of-hours premiums for such days.

86.    Throughout their respective employment periods, Plaintiffs were paid weekly and received their wages entirely in cash, without a pay stub or any other wage statement that provided details of the hours worked during the week or their pay rates.

87.     During their respective employment periods, Plaintiffs were not provided with annual wage notices or notices when their pay rates changed containing, *inter alia*, information regarding rates of pay, the amount of tip credit to be taken, or any deductions subtracted from Plaintiffs' wages, as required by the NYLL.

**<u>Defendants' Unlawful Corporate Policies</u>**

88.     Plaintiffs and the Collective and Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay minimum wages, overtime premiums, and spread-of-hours premiums.

89.     Plaintiffs have spoken with other employees of Defendants who were similarly paid below minimum wage for all hours worked. Defendants' failure to pay Plaintiffs minimum wages for all hours worked is and has been a corporate policy of Defendants which has applied to all of their non-management employees throughout the Class Period.

90.     Plaintiffs have spoken with other employees of Defendants who were similarly paid a fixed salary for all hours worked, which did not include overtime premium compensation for hours worked in excess of forty (40) in a given workweek. Defendants' failure to pay Plaintiffs overtime compensation of one and one-half (1.5) times their regular hourly rate for hours over forty (40) each week is and has been a corporate policy of Defendants which applies to non-management employees throughout the Class Period.

91.     Defendants' failure to pay Plaintiffs spread-of-hours premiums for days in which they worked a spread of more than ten (10) hours and/or a split shift is and has been a corporate policy which applies to all of their non-management employees who worked more than ten (10) hours in a day and/or a split shift throughout the Class Period.

92.     Defendants did not notify Plaintiff Anaya or the Class Members whether they were

relying upon the tip credit in calculating their wages in accordance with the requirements of the NYLL.

93.     Because Defendants routinely violated the requirements for taking the tip credit (i.e., did not provide notice, and the owners pocketed some of the tips), Defendants were not entitled to pay Plaintiff Anaya or the Class Members the New York "tipped" minimum wage and instead were obligated to pay Plaintiff Anaya and the Class Members the full statutory minimum wage.

94.     Defendants' policy of paying certain employees on a "salary" basis rather than an hourly basis after January 1, 2011, violated 12 N.Y.C.R.R. § 146-2.5.

95.     Defendants did not provide Plaintiffs and the Class Members with a wage statement or any other breakdown of the hours that their worked or their regular or overtime rates of pay.

96.     Defendants have not provided Plaintiffs or Class Members with wage notices at the time of hire or when their wage rates changed.

97.     Throughout the Class Period and, upon information and belief, continuing until today, Defendants have likewise employed other individuals like Plaintiffs in positions that require little skill and no capital investment. Upon information and belief, such individuals were required to work for less than minimum wage and were not paid overtime premiums when working in excess of forty (40) hours per week.

98.     Additionally, such individuals were not provided spread-of-hours premiums while working shifts in excess of ten (10) hours, nor were they provided with proper wage notices at hiring or before a change in wage rate, or proper wage statements with their wage payments on a weekly basis.

99.     Upon information and belief, throughout the Class Period and continuing until

today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE
### (Brought on Behalf of Plaintiffs and the Collective Action Members)

100.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

101.    By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

102.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

103.    Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. By failing to notify Plaintiffs and the Collective Action members that they were relying on the tip credit in calculating employees' hourly rates, Defendants lose the ability to utilize a tip credit against the FLSA's minimum wage. Therefore, Plaintiffs and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

104.   Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

105.   By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

106.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

107.   Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiffs and the Class Members)**

108.   Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

109.   Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

110.   Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Class Members)**

111.   Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

112.   Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

113.   Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

114.   Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

115.   Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than ten (10) hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

116.   Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq*.

**SIXTH CAUSE OF ACTION**
**<u>NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICES</u>**
**(Brought on Behalf of Plaintiffs and the Class Members)**

117.   Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

118.   Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195(1), in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable;  the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the

telephone number of the employer; plus such other information as the commissioner deems material and necessary.

119.   Due to Defendant's violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendant fifty dollars ($50.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq*., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**SEVENTH CAUSE OF ACTION**
**<u>NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS</u>**
**(Brought on Behalf of Plaintiffs and the Class Members)**

120.   Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

121.   Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

122.   Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as

provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## EIGHTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNLAWFUL WITHHOLDING OF GRATUITIES
### (Brought on Behalf of Plaintiff Anaya and the Class Members)

84.     Plaintiff Anaya, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

85.     Defendants have willfully failed to compensate Plaintiff Anaya and the Class Members for all gratuities earned by withholding a portion of gratuities left by patrons for Plaintiff Anaya and the Class, in violation of § 196-d of the New York Labor Law. Accordingly, Defendants are required to compensate Plaintiff Anaya and the Class Members for all gratuities withheld by Defendants.

86.     Due to the Defendants' New York Labor Law violations, Plaintiff Anaya and the Class Members are entitled to recover from Defendants their unpaid gratuities, damages for unreasonably delayed payment of wages liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et al.*, 196-d.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.      Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action

by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing

Plaintiffs and their counsel to represent the Collective Action Members;

b.     Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.     An order tolling the statute of limitations;

d.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.     An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.     An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.     An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.     An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten (10) hours;

i.     Fifty dollars ($50.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(1) occurred or continue to occur, up to a

maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members, as provided for by NYLL, Article 6 § 198(1)-b;

j.　　　Two hundred and fifty dollars ($250.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(3) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members, as provided for by NYLL, Article 6 § 198(1)-d;

k.　　　An award of damages arising out of the non-payment of gratuities;

l.　　　An award of liquidated damages arising out of the non-payment of gratuities;

m.　　　An award of prejudgment and post-judgment interest;

n.　　　An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

o.　　　Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
　　　　May 14, 2020

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____
Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com

111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Chamiara, Inc., Mela Food Corp, Haven Diner and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____
Signature

Elmer O Aneya Gomez
Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de Chamiara, Inc., Mela Food Corp, Haven Diner y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios minimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentancion de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

Elmer O Aneya Gomez
Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.

### CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Chamiara, Inc., Mela Food Corp, Haven Diner and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____          William Noé Batres
Signature                        Printed Name

### CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de Chamiara, Inc., Mela Food Corp, Haven Diner y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentancion de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____          William Noé Batres.
Firma                            Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.