

**PELTON GRAHAM** LLC

ADVOCATES FOR JUSTICE

March 8, 2021

Brent E. Pelton, Esq.
Pelton@PeltonGraham.com

**VIA ECF**

Magistrate Judge Steven L. Tiscione
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> **Re:** ***Anaya Gomez, et al. v. Chamiara, Inc., et al.***
> **Civil Action No. 20 Civ. 02190 (GRB)(ST)**

Dear Judge Tiscione:

This office represents named plaintiffs Elmer Orlando Anaya Gomez ("Anaya Gomez") and William Noe Batres ("Batres") and opt-in plaintiff Rodel Leonel Ovalle ("Ovalle" and, together with Anaya Gomez and Batres, the "Plaintiffs"). We write, jointly with Raymond Nardo, Esq., counsel for Chamiara, Inc., Harbans Singh ("Singh") and Balwinder "Linda" Kaur ("Kaur" and, together with Chamiara, Inc. and Singh, the "Chamiara Defendants") and Jack N. Posner, Esq., counsel for Mela Food Corp. and Alex Molina ("Molina" and, together with Mela Food Corp., the "Mela Defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) and the Court's February 13, 2021 Order. Counsel for the parties respectfully submit that the attached negotiated Settlement Agreement (Exhibit A) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

**I.    Procedural History and Plaintiffs' Allegations**

The Named Plaintiffs commenced this action by filing their Class & Collective Action Complaint in the Eastern District of New York ("EDNY") on May 14, 2020. (Dkt. No. 1). Plaintiff Ovalle later joined the lawsuit by filing a Consent to Become a Party Plaintiff form on July 1, 2020. (Dkt. No. 19).

On June 5, 2020, Mr. Nardo e-mailed Plaintiffs' counsel corporate tax returns for the Chamiara Defendants showing that Chamiara, Inc. had revenues of approximately $107,000.00 in 2019, $207,000.00 in 2018 and $211,000.00 in 2017. On June 29, 2020, the Chamiara Defendants filed a pre-motion letter regarding an anticipated motion to dismiss. (Dkt. No. 16). Specifically, the Chamiara Defendants argued that Plaintiffs' claims should be dismissed due to lack of jurisdiction, as the diner's revenues did not exceed five hundred thousand dollars ($500,000.00) during the relevant time period. (*Id*.). The Mela Defendants filed a pre-motion letter regarding an

**New York**: 111 Broadway, Suite 1503, New York, NY 10006  Tel. 212-385-9700  Fax 212-385-0800
**San Francisco**: 456 Montgomery Street, 18th Fl., San Francisco, CA 94104  Tel. 415-437-9100  Fax 212-385-0800

www.PeltonGraham.com

anticipated motion to dismiss on similar grounds on June 30, 2020. (Dkt. No. 18). Specifically, the Mela Defendants argued that the they purchased the diner from the Chamiara Defendants in or around July 2020 and reopened in or around August 2020 after closing the business for a short time to complete renovations such that they also were unable to meet the $500,000.00 threshold. (Dkt. No. 18). The Mela Defendants further stated that they were forced to close the restaurant due to the COVID-19 global health emergency shortly thereafter and solely operated on a reduced scheduled by providing limited curbside pickup. (*Id*.).

Plaintiffs submitted their opposition to Defendants' pre-motion letter on July 15, 2020, arguing that the FLSA's enterprise coverage requirement of $500,000.00 in gross annual sales is not jurisdictional but a requirement that goes to the merits of a claim such that disputes regarding whether Plaintiffs can establish coverage are better resolved at the summary judgment stage. (Dkt. No. 25). Plaintiffs additionally argued that Defendants' evidence, consisting of unsigned, redacted tax returns for Chamiara, Inc. and similarly redacted personal returns for Singh and Kaur, was insufficient to establish lack of enterprise coverage. (*Id*.). Plaintiffs further attached a declaration of Plaintiff Anaya Gomez, who alleged that a substantial portion of Haven Diner's business, including customer tips and wages paid to employees, was done in cash, such that it is Plaintiffs' belief that Defendants' proffered records provide an incomplete picture of Defendants' finances.

The parties subsequently began engaging in settlement discussions, and Plaintiffs circulated an initial damages analysis for the named plaintiffs on July 1, 2020. On July 21, 2020, the parties appeared for a pre-motion conference before Judge Brown during which the Court held Defendants' anticipated motions in abeyance and ordered the parties to report back on the status of settlement talks within thirty (30) days. (Dkt. No. 21). Plaintiffs exchanged a revised damages analysis, including Plaintiff Ovalle's alleged damages, with Defendants on August 5, 2020.[1] As discussed in greater detail below, throughout the litigation, counsel for Defendants repeatedly emphasized that Haven Diner underwent a period of severe financial distress due to COVID over the past year and, as a result, had very limited resources to pay a settlement. On August 21, 2020, the parties filed a letter stating that they had not yet reached a resolution and requested a referral to the EDNY Mediation Program. (Dkt. No. 22). The Court referred the parties to mediation on August 24, 2020. The parties subsequently selected Giulio Zanolla as their mediator and scheduled the first mediation session for October 8, 2020. (Dkt. No. 23). As the mediation date approached, the parties continued to engage in discussions regarding the timing of any potential payout and the maximum amounts that each set of defendants could contribute to resolve the matter. On October 5, 2020, the parties contacted Mr. Zanolla to cancel the upcoming mediation session, as they believed that they were sufficiently close to a settlement to avoid incurring additional expenses mediating the claims or engaging in motion practice.

On January 15, 2021, the parties appeared for a status conference before Your Honor during which they reported that while they had reached a tentative settlement, Mr. Posner had

---

[1] In the interest of settlement and due to difficulties in estimating the specific tip amounts that Plaintiffs claim to be owed, Plaintiffs' initial damages analyses did not include a computation of damages for unpaid gratuities.

Magistrate Judge Steven L. Tiscione
FLSA Settlement Fairness Letter
Page **3** of **8**

concerns that the Mela Defendants would not be able to make timely payments due to the declining financial health of the diner, and there remained an outstanding tax issue with respect to one of the plaintiffs. The Court set the deadline for the parties' settlement motion for February 15, 2021 and instructed the parties to let the Court know if they were unable to resolve the aforementioned issues raised during the conference. (Dkt. No. 25). On February 12, 2021, the parties reported that they had resolved all outstanding issues and were in the process of collecting signatures on the settlement agreement. (Dkt. No. 26). On February 13, 3031, the Court granted the parties' request for a two (2)-week extension to file their settlement motion.

## II.     The Settlement Accounts for Litigation Risk

Throughout the litigation, the parties have largely discussed Defendants' ability to pay a settlement in light of the COVID-19 global health emergency. Plaintiffs allege that they worked as dishwashers, delivery employees, a busser, a grill man, a line cook and a server for Defendants' diner located in Port Washington, New York. Specifically, Plaintiffs allege that they performed work for the Chamiara Defendants until approximately July 2019, when the diner was sold to the Mela Defendants. Starting in or around August 2019, Plaintiffs allege that they began working for the Mela Defendants. During their respective employment periods, Plaintiffs allege that they worked between fifty-four (54) and eighty-four (84) hours per week. For their work, Plaintiffs Anaya Gomez and Batres allege that they were paid a flat weekly salary of between four hundred dollars ($400.00) and six hundred and fifty dollars ($650.00) per week for all hours that they worked, including those worked in excess of forty (40) in a given workweek, such that they did not receive the statutory minimum wage for all hours that they worked, overtime premiums for hours worked in excess of forty (40) in a given week or spread-of-hours premiums when they worked in excess of ten (10) hours per day. Plaintiff Ovalle, who worked as a sever for the Mela Defendants, alleges that he received an hourly rate of seven dollars ($7.00) for all hours that he worked, including hours worked in excess of forty (40) in a week. Plaintiffs allege that Defendants failed to maintain a formal timekeeping system to keep track of the hours that they worked throughout their respective employment periods and that they were simply paid the same salary amount each week, regardless of the number of hours that they worked.

Plaintiffs further allege that Defendants retained certain gratuities left by customers and failed to pay all such gratuities to which Plaintiffs were entitled. Specifically, Plaintiffs allege that they occasionally witnessed certain individual defendants pocket the money that customers left on the table or counter as tips intended for front-of-the-house employees and that they frequently did not receive tips that customers left via credit card. Plaintiffs allege that throughout their respective employment periods, they received their payments entirely in cash without a paystub or any other breakdown of the hours that they worked or their regular or overtime rates. Finally, Plaintiffs claim that they did not receive a wage notice on their date of hire or when their pay rate changed, in violation of New York Labor Law § 195.

While Defendants vigorously deny Plaintiffs' allegations, including the number of hours that Plaintiffs claim to have performed services for Defendants, the crux of the parties' settlement discussions has been Defendants' alleged inability to pay a substantial settlement due to their

Magistrate Judge Steven L. Tiscione
FLSA Settlement Fairness Letter
Page **4** of **8**

extremely limited resources in the wake of the pandemic. Throughout the litigation, Defendants have alleged that the diner is a small operation with few tables that relied on heavy train traffic from a nearby Long Island Railroad station for the vast majority of its business. Although the Chamiara Defendants sold the diner prior to the start of the pandemic, Mr. Nardo produced personal 2017 and 2019 tax returns for Singh and Kaur showing limited income and has represented that his client is currently earning little money driving for a ridesharing service and struggling to pay his mortgage. As mentioned above, the Mela Defendants allege that they were forced to close the restaurant during the height of the pandemic, operating on a drastically reduced schedule with no indoor dining, and lost a significant portion of their customer base as LIRR ridership decreased. As the economic effects of the pandemic are ongoing, it remains uncertain whether the business will recover. Indeed, the parties' settlement agreement includes a contingency clause stating that in the event that the State of New York imposes a shutdown of in-person restaurant service in connection with the COVID-19 global health crisis, the Mela Defendants' obligation to make payments shall be suspended until thirty (30) days after restaurants are permitted by the State of New York to resume in-person service. Ex A. ¶ 3(g). Mr. Posner has further represented that the Mela Defendants are far behind on their rent payments and that current revenues barely cover gas, electric and supplies. Since the start of the pandemic, the diner has additionally been unable to seat customers to full capacity. Both sets of defendants have claimed an overall lack of assets outside of the diner to pay a settlement.

As of the date of this submission, Plaintiffs, who allege that they were paid entirely in cash, have not received any time or payroll records from Defendants. Because Defendants have failed to produce records of hours worked, if the matter proceeded to trial, Plaintiffs would be able to rely on their testimony as to the extent of their work as a matter of just and reasonable inference. While Plaintiffs believe that a factfinder would credit their testimony over the Defendants, Plaintiffs recognize that the lack of documents demonstrating the hours worked could potentially limit the amount of damages Plaintiffs could recover at trial regarding their minimum wage, overtime and spread-of-hours claims if a factfinder credited Defendants' testimony in its entirety.

In advance of the previously scheduled mediation, Plaintiffs' counsel created an individual damages analysis based on Plaintiffs' best estimates of the hours that they worked and the wages that they were paid. Plaintiffs' final damages analysis resulted in $73,906.14 in unpaid minimum wages, $58,888.40 in unpaid overtime premiums and $11,953.29 in unpaid spread-of-hours premiums, for a total of $144,747.83 in "actual" wage damages. Although there is a possibility that Plaintiffs could recover higher damages if the case proceeded to trial, there is also the possibility that they could receive much lower damages, or nothing at all. As mentioned above, perhaps the biggest litigation risk, is Defendants' ability to pay a judgment if one were obtained by Plaintiffs. As such, rather than move forward with lengthy and costly litigation and potentially recover a judgment that may be impossible to collect, Plaintiffs prefer to settle now, on an individual basis, for an amount that they would be guaranteed to receive under the terms of the settlement.

The parties believe that the settlement amount (i.e., $35,000.00) is a fair recovery based on the risks associated with establishing the calculated damages, the risks associated with proceeding

Magistrate Judge Steven L. Tiscione
FLSA Settlement Fairness Letter
Page **5** of **8**

to trial and Defendants' ability to pay, which, in light of the pandemic, was a substantial factor in ultimately reaching the settlement number that was agreed to by the parties.

## III.    Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $35,000.00 (the "Settlement Amount"), with $30,000.00 to be paid by the Chamiara Defendants and $5,000.00 to be paid by the Mela Defendants. Of the total settlement amount, $11,064.90 is payable to Plaintiffs' counsel (including $950.00 in expense reimbursements and $10,114.90 in attorneys' fees). The remaining $23,935.10 is payable directly to Plaintiffs (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage-and-hour release for any claims arising before Plaintiffs signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or Settlement.

The agreement includes a mutual non-disparagement provision between Plaintiffs and Defendants.  The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in a FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

1) Initially, the non-disparagement provision is mutual and binds Plaintiffs and Defendants. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement clauses.  *See Sadana v. Park Li, Ltd.,* No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in a FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting the Parties to make truthful statements about their experience in this litigation.  Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiffs' rights under the FLSA, and Defendants' interest in preventing the dissemination of defamatory statements.  *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y.

July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.,* No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC,* No. 15-CV-2588 (AMD)(LB), 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc*., No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

The mutual non-disparagement clause is bolstered by additional provisions that permit either party to commence an action in the event of a breach of the agreement and to obtain reasonable attorneys' fees in the event that they prevail.

## IV.     Plaintiffs' Attorney's Fees and Expenses

As set forth in the attached Affidavit of Brent E. Pelton, Esq. (Exhibit B), as of March 1, 2021, Plaintiffs' counsel has spent more than 84 hours in prosecuting and settling this matter, resulting in a lodestar of $20,319.17 Plaintiffs' counsel has spent $950.00 in actual litigation costs. The portion of the settlement that Plaintiffs seek as attorneys' fees (i.e., $11,064.90) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, which is less than the lodestar amount and is consistent with what was agreed upon between the Plaintiffs and their counsel in their retainer agreements.

The hourly billing rates utilized by Plaintiffs' counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Eastern District of New York. In fact, the same rates have been approved in connection with a recent wage and hour settlement in the Eastern District. See *Hall v. Prosource Techs., LLC*, 14-cv-2502, 2016 U.S. Dist. LEXIS 53791 at *38-41 (E.D.N.Y. April 11, 2016). Accordingly, Plaintiffs' counsel submits that the attorney's fees component of the settlement is fair and reasonable.

For the purposes of this settlement, Defendants take no position with respect to counsel's request for attorneys' fees and leave to the Court's determination provided that such attorneys' fees and costs are solely paid out of the Settlement Amount in accordance with the Settlement Agreement.

## V.     The Parties Believe that the Settlement Is Fair and Reasonable

Magistrate Judge Steven L. Tiscione
FLSA Settlement Fairness Letter
Page **7** of **8**

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).[2] Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations that took place over the course of several months. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs and the risk that Defendants, a single-location diner with a drastically reduced customer base, would be unable to pay a judgment if one were obtained by Plaintiffs. Due to the lack of records in this matter, the parties would likely need to engage in extensive discovery, including written discovery and numerous depositions, which would consume a tremendous amount of time and resources. Rather than move forward with lengthy and costly litigation and potentially obtain a judgment that would be impossible to collect, settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation.

*        *        *        *        *

---

[2] The parties note that *Cheeks* relies heavily on the Eleventh Circuit's decision in *Lynn's Food Stores, Inc. v. United States Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982), and that the Eleventh Circuit itself has subsequently contemplated that the supervision doctrine laid out in that case may apply only where a "compromise" of an FLSA claim has occurred. *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009).

Magistrate Judge Steven L. Tiscione
FLSA Settlement Fairness Letter
Page **8** of **8**


As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiffs and respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.


Respectfully submitted,


By: */s/   Brent E. Pelton, Esq.* _____
Brent E. Pelton, Esq.
Taylor B. Graham, Esq.
Kristen E. Boysen, Esq.
**PELTON GRAHAM LLC**
111 Broadway, Suite 1503
New York, New York 10006
Tel.: (212) 385-9700

*Attorneys for Plaintiffs*

By: ___*/s/ Raymond Nardo, Esq.* _____
Raymond Nardo, Esq.
129 Third Street
Mineola, New York
Tel: (516) 681-1100

*Attorney for the Chamiara Defendants*


By: _*/s/ Jack N. Posner, Esq.* _____
Jack N. Posner, Esq.
1100 Franklin Avenue, Suite 305
Garden City, NY 11530
Tel.: (516) 248-2624

*Attorney for the Mela Defendants*

Enclosures

cc:    All counsel (via ECF)


www.PeltonGraham.com